Timothy B. DeSieno
Craig A. Wolfe
Jason R. Alderson
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Tel: (212) 309-6000
Fax: (212) 309-6001
Email: tim.desieno@morganlewis.com
      craig.wolfe@morganlewis.com
      Jason.alderson@morganlewis.com

*Attorneys for the Foreign Representative*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>M&G MÉXICO HOLDING, S.A. de C.V.,<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 19-11223 |
| In re:<br><br>M&G POLÍMEROS MÉXICO, S.A. de C.V.,<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 19-11224 |

**DECLARATION OF LUIS RAFAEL APPERTI LLOVET**

    I, Luis Rafael Apperti Llovet, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge, information and belief:

    1.    I, Luis Rafael Apperti Llovet, in my capacity as foreign representative ("Foreign Representative") of M&G México Holding, S.A. de C.V. ("Mexico Holding"), and M&G Polímeros México, S.A. de C.V. ("Polímeros Mexico," and together with Mexico Holding, the "Debtors" or "M&G Mexico"), hereby submit this declaration ("Declaration") in support of

DB1/ 103494248.7

(a) my verified petitions (respectively, the "Mexico Holding Verified Petition" and the "Polímeros Verified Petition," and together, the "Verified Petitions"), for entry of orders (i) recognizing the *Concurso Mercantil* (as defined in this Declaration) as the foreign main proceeding pursuant to sections 1515 and 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"); (ii) confirming relief pursuant to section 1520 of the Bankruptcy Code; (iii) granting interim relief pursuant to sections 1519 and 1521 of the Bankruptcy Code; and (iv) granting further relief pursuant to sections 105(a), 1507(a), 1509(b)(2)-(3), 1521(a), and 1525(a) of the Bankruptcy Code; and (b) the motion for entry of orders granting provisional relief pursuant to sections 1519(a) and 362(a) of the Bankruptcy Code, and additional relief pursuant to section 1521 of the Bankruptcy Code (the "Provisional Relief Motion").  This Declaration refers to Chapter 15 of the Bankruptcy Code (11 U.S.C. §§ 1501-1532) as "Chapter 15" and to the proceedings resulting from the Verified Petitions as the "Chapter 15 Proceedings."

2. I am a resident of Mexico, and I am the Chairman of the Board of Directors of both Mexico Holding and Polímeros Mexico.

**Appointment as Foreign Representative**

3. M&G Mexico appointed and authorized me to act as their Foreign Representative on April 19, 2019.  Specifically, each of M&G Mexico's Boards of Directors appointed and authorized me to act on their behalf in any legal proceeding outside of Mexico, including these Chapter 15 Proceedings.  Additionally, M&G Mexico granted me power of attorney appointing and authorizing me to act on their behalf in any legal proceeding outside of Mexico, including the Chapter 15 Proceeding. **Exhibit A** to this Declaration are true and correct copies in Spanish and English of the resolutions of each of the two Boards of Directors of M&G Mexico, dated April 19, 2019, that appoint and authorize me to act as Foreign Representative, granting me power of

attorney to act as Foreign Representative, and authorizing me to commence the Chapter 15 Proceedings.

4.   Except as otherwise indicated, the facts set forth in this Declaration are based upon my personal knowledge, discussions with or documents provided by M&G Mexico's management, other employees, and advisors, or my opinion based on my experience and familiarity with M&G Mexico's assets, business, operations, and financial conditions. If called upon to testify, I can and will testify competently as to the facts and opinions set forth herein.

### Overview of the Debtors and Their Status

5.   Polímeros Mexico, founded in 1995, is a Mexican-based manufacturer of PET resin (as further discussed below) and is the subject of a voluntary insolvency proceeding in Mexico known as a *concurso mercantil*. On March 12, 2019, the *Concurso* Court (as defined below) formally admitted Polímeros Mexico in a *concurso mercantil* proceeding with a prepackaged plan of reorganization by a resolution issued by such court. Polímeros Mexico's *concurso mercantil* proceeding is identified with the number 53/2019 and is assigned to the Thirteenth District Court for Civil Matters of Mexico City (*Juzgado Décimo Tercero de Distrito en Materia Civil en la Ciudad de México*) (the "*Concurso* Court").

6.   Mexico Holding is also the subject of a *concurso mercantil* proceeding. On March 12, 2019, Mexico Holding commenced its *concurso mercantil* before the *Concurso* Court in a proceeding (i) jointly administered with the Polímeros Mexico *concurso mercantil* and subject to its prepackaged plan of reorganization; and (ii) identified with the same number, 53/2019. This Declaration refers to the joint *concurso mercantil* proceedings of Mexico Holding and Polímeros Mexico as the "*Concurso Mercantil*." **Exhibit B** to this Declaration is a true and correct copy of the judgment of the *Concurso* Court, dated March 29, 2019, in Spanish together with a certified English translation of same. Such judgment finds that M&G Mexico's prepackaged plan satisfied

requisite filing requirements under Mexican law and authorizes the cases to enter directly into the "*conciliation*" or restructuring stage (the "*Concurso* March 29 Order").

7.    Voting on M&G Mexico's joint prepackaged plan of reorganization in the Concurso is tabulated on a debtor-by-debtor basis. Significantly, Mexico Holding's has the votes of secured and unsecured creditors representing 86.74% of liabilities. Acceptances for the Polímeros Mexico prepackaged reorganization is equally high at 86.92%. Each is well in excess of the 50% approval level required under Mexican law. Further, the *conciliation* stage involves, among other things, the appointment of a *conciliator*, which is a court representative (which has already occurred), the debtor reaching an agreement with any remaining creditors, and a *conciliator* proof of claim process measured from the date of publication notice of the *Concurso Mercantil* (which has not yet occurred) in the Official Gazette of the Federation ("*Diario Oficial de la Federación*") and publication of a summary of the *Concurso* March 29 Order in the Public Registry of Commerce corresponding to the domicile of Mexico Holding and Polímeros México. I believe that with the current creditor pool, the *Concurso Mercantil* will likely obtain the support of creditors holding 95% of aggregate liabilities.

8.    Mexico Holding and Polímeros Mexico are each 99% owned by a trust established solely for the benefit of M&G Mexico's non-affiliated creditors in connection with the United States chapter 11 bankruptcy filings of certain affiliated entities (the "M&G Chapter 11 Debtors") on October 31, 2017 in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which are jointly administered as *In re M & G USA Corporation et al.*, Chapter 11 Case No. 17-12307 (BLS) (the "M&G Chapter 11 Cases"). Because Mexican law requires at least two shareholders, the remaining 1% in each company is held by Servicios Tamaulipas, S.A. de C.V., which is a non-debtor service company with no other assets. The

separation in the M&G Chapter 11 Cases stemmed from a settlement, dated November 5, 2018, that was reached by and among the M&G Chapter 11 Debtors, non-debtors, and other primary stakeholders, regarding the resolution of certain intercompany and other claims (the "M&G Chapter 11 Settlement").[1]  As part of the settlement, the United States M&G Chapter 11 Debtors agreed to contribute debtor M & G Holding USA, LLC and debtor M & G USA Corporation's respective equity interests in certain Mexican affiliates, including non-debtors M&G Mexico, to a Mexican trust for the benefit of their non-affiliated creditors.

9. Mexico Holding and Polímeros Mexico's registered office, principal place of business and headquarters are located at Petrocel Km 2, Puerto Industrial, Altamira Tamaulipas, 89603, Mexico.  M&G Mexico's cash management and accounting functions are located there. Furthermore, their senior management, including, but not limited to, the chief executive officer, chief financial officer, and the chief legal officer, work in and from this location.

10. As noted above, Mexico Holding, through Polímeros Mexico, manufactures high quality polyethylene terephthalate (PET) resin at its facility located in Altamira, Mexico.  PET is a polymer produced principally from purified terephthalic acid (PTA) resin and monoethylene glycol, and is used principally to manufacture plastic bottles and other packaging in the beverage, food and personal care industries.  The company's primary customers are plastic packaging companies.

11. In addition, M&G Mexico has assets located in the United States consisting of certain claims, accounts receivable owed to M&G Mexico by customers in the U.S. (and collateral security in respect of accounts receivable), an equity interest in a United States subsidiary (PSL,

---

[1] M&G Chapter 11 Cases, Dkt. No. 2042, "*Order Approving Settlement Agreement By and Between Debtors, Mexican Affiliates, Magnate S.A R.L. Brazilian Affiliates, Italian Affiliates and M&G Capital 2 S.A R.L.*"

as defined below), and a reversionary interest in a fee reserve deposit with its United States counsel. First, as to claims, under the M&G Chapter 11 Settlement: (i) Mexico Holding was granted an allowed unsecured claim against debtor M&G USA Corporation, in the amount of $102,484,099.10; and (ii) Polímeros Mexico was granted allowed unsecured claim against debtor Chemtex International Inc., in the amount of $42,000,000[2] (collectively, the "Allowed Claims"). On December 17, 2018, the Bankruptcy Court entered an order confirming a joint chapter 11 plan of liquidation in the M&G Chapter 11 Cases, and in the process established a creditor liquidating trust to, among other things, liquidate assets of the estates and make distributions to holders of allowed claims (the "M&G Liquidating Trust").[3] The M&G Liquidating Trust, which went effective on December 28, 2018, is administered by a liquidating trustee located in New York, NY, and is governed in accordance with New York law. As of the date hereof, M&G Mexico has not received any distributions on account of the Allowed Claims.

12. Second, as to accounts receivable, in 2017 Polímeros Mexico formed Polymers Sales & Logistics, LLC to facilitate the supply of certain PET customers located in the United States ("PSL"). PSL is located in Houston, Texas. Historically, Polímeros Mexico manufactured and shipped PET product to PSL, and PSL in turn supplied the United States customer base. Polímeros Mexico accordingly held accounts receivable owed to it by PSL for PET sold. To secure PSL's obligations in respect of these accounts receivable, PSL had made an absolute assignment to Polímeros Mexico of all of PSL's accounts receivable generated from the sales of PET to United States customers. These customers are located throughout the United States including, without

---

[2] Polímeros Mexico's unsecured claim against Chemtex International Inc. is subject to a pending recognition of transfer and assignment to creditor Banco Mercantil del Norte, S.A., Institucion de Banca Multiple, Groupo Financiero Banorte.

[3] M&G Chapter 11 Cases, Dkt. No. 2146-2.

limitation, in Texas, Minnesota, Ohio, Georgia, Pennsylvania, and Wisconsin. More recently, however, Polímeros Mexico and PSL have changed their business relationship, and PSL is now a mere marketing service provider to Polímeros Mexico. Accordingly, customer receivables generated from ongoing and future PET sales to United States customers are directly owned by Polímeros Mexico.

13. In addition, Polímeros Mexico holds all of the equity in PSL.

14. Finally, M&G Mexico share a reversionary interest in a fee reserve deposited with Morgan, Lewis & Bockius LLP, under the terms of an engagement letter with the firm's New York office.

15. I selected this Court as the venue for the Chapter 15 Proceedings in consultation with counsel and advisors. As noted above, M&G Mexico has property located throughout the United States, but has a concentration of property in this District in the form of the above claims of almost $145 million and a retainer held by New York counsel. Further, upon information and belief, the PBGC (as defined below) is very familiar with this District and often appears before this Court to represent its interests in other bankruptcy proceedings.

16. At the time of commencement of the *Concurso Mercantil,* M&G Mexico has a substantial workforce in Mexico at its plant in Altamira Tamaulipas.

### Impact of M&G Chapter 11 Cases

17. The M&G Chapter 11 Cases, as noted above, resulted in the separation of M&G Mexico from a far larger enterprise commonly referred to as the M&G Group, with Mossi & Ghisolfi S.p.A., an entity organized under the laws of Italy, as the ultimate parent company. The M&G Group, founded in 1953, has been engaged in the plastic industry for over 60 years. In addition to operating business lines related to the production of biofuels and polyester fiber,

through certain subsidiaries that included debtor M&G Chemicals S.A., M&G Group was engaged in the production of PET resin and engineering related to PET manufacturing plants. M&G Group's PET and other chemical business had a global footprint, with manufacturing locations in Brazil, Mexico and the United States.

18. The M&G Chapter 11 Cases commenced on October 31, 2017 and involved twelve debtors located in the United States and Luxembourg, with debtor M&G Chemicals S.A. as the direct or indirect parent of ten of the debtors (the "M&G Chemicals Group"). Although a variety of factors led to the chapter 11 filings, among the most significant were cost overruns experienced by the M&G Chemicals Group in the construction of a PET plant in Corpus Christi, Texas (the "Corpus Christi Plant"). Delays and rising costs at the Corpus Christi Plan forced the M&G Chemicals Group to incur significant additional indebtedness that ultimately caused a liquidity crisis. And when combined with certain market forces, such as increased raw material costs and lower-priced competition, the commencement of the M&G Chapter 11 Cases was deemed the only alternative.

19. M&G Mexico was not immune from the liquidity crisis caused in part by the construction of the Corpus Christi Plant. Specifically, both Mexico Holding and Polímeros Mexico were heavily encumbered non-debtor subsidiaries of the M&G Chemicals Group[4] in the M&G Chapter 11 Cases. And separation only removed M&G Mexico from the M&G Group, but otherwise left these obligations intact. In the short period of time between separation (November 2018) and the *Concurso Mercantil* (March 12, 2019), M&G Mexico struggled to address such legacy indebtedness and run its business in the ordinary course. Indeed, in and around the filing of the *Concurso Mercantil*, M&G Mexico had aggregate (i) secured debt of **[$163 million]**; and

---

[4] Under this structure, Mexico Holding held all of the equity of Polímeros Mexico.

(ii) unsecured debt of **[$820 million]**, the majority of which was owed to banks and other financial institutions.

### Events Leading to the Concurso Mercantil

20. M&G Mexico's legacy indebtedness and certain other related challenges precipitated the *Concurso Mercantil* on March 12, 2019. An immediate consequence stemmed from M&G Mexico's separation from the M&G Group in the first instance. A significant part of M&G Mexico's business simply vanished when it was no longer able to leverage the M&G Group's internal and external customer base. Equally damaging, the separation caused all infusions of capital from the M&G Group to halt, thereby effecting daily operations and capital flow.

21. Second, the production of PET is capital intensive, and M&G Mexico historically relied on financing from not only from the M&G Group, but also from outside credit and financial institutions. However, legacy indebtedness challenged M&G Mexico's access to such financial institutions and markets, and—in a tightening spiral—prevented M&G Mexico's timely performance under certain contracts for the supply of PET resin and challenged overall revenue. Lack of sufficient financing has also cutoff M&G Mexico from long-term raw material supply contracts and the favorable pricing such contracts entail. Accordingly, contract defaults and increased costs further diminished M&G Mexico's ability to meet their obligations to creditors, and the cycle commenced anew.

22. Third, the above financing challenges only served to intensify a fundamental change in M&G Mexico's PET business. In the past, many of M&G Mexico's customer contracts contained "scaling" provisions to adjust unit pricing to account for changes in the marketplace, and encompassed such items as increased raw material costs and/or inflation. In recent years,

increased competition has resulted in the omission of such scaling provisions in M&G Mexico's customer contracts. Consequently, M&G Mexico now must absorb many significant costs that used to be passed on to the customers.

23. Finally, the above financial and operational constraints caused M&G Mexico to increase their reliance on unfavorable and unsustainable contracts. In fact, much of M&G Mexico's current revenue is derived from a certain "PET Tolling Conversion Agreement" with DAK Resinas Americas Mexico, S.A. de C.V. ("DAK Mexico"), entered on October 31, 2017, terms and conditions that where negotiated therefore entering into a new "PET Tolling Conversion Agreement" dated January 25, 2019 (the "DAK Agreement"). Under the DAK Agreement, DAK Mexico supplies certain compounds for M&G Mexico's production of PET resin, and in exchange, DAK Mexico receives a certain portion of PET sale proceeds and control over production. The DAK Agreement does provide some revenue to M&G Mexico in a midst of a liquidity crisis and allows M&G Mexico to stay current with certain strategic suppliers. But production constraints imposed by DAK Mexico hinders M&G Mexico's ability to purchase sufficient raw materials and produce PET at a volume necessary to maintain a solid customer base (both in Mexico and abroad) and generate sustainable margins. In short, continued reliance on the DAK Agreement and others like it would only accelerate M&G Mexico's decline.

24. The *Concurso Mercantil* seeks to right-size M&G Mexico's balance sheet and address the above financial and operational issues through voluntary and fully consensual prepackaged plan of reorganization. By way of preparation, M&G Mexico expended considerable time and effort to reach a stand-still and other agreements with their primary financial and banking creditors to maintain the *status quo*, provide minimum financing to operate in the ordinary course, and permit time to negotiate a mutually agreeable path forward. The end result is prepackaged

plan and a *Concurso Mercantil* supported by creditors representing over 85% of the respective liabilities of Mexico Holding and Polímeros Mexico as set forth in the *Concurso* March 29 Order.

25. The *Concurso Mercantil*, like any bankruptcy proceeding in the United States, includes global injunctive relief or stay on any creditor efforts to (i) collect debtors or enforce liens or otherwise attach, encumber, or interfere with any assets or rights of the debtors. On March 12, 2019, or the date the *Concurso Mercantil* was admitted, the foregoing global stay went into effect. Further, pursuant to the *Concurso* March 29 Order, the *Concurso* Court reinforced the global stay by specifically ordering the suspension of any seizure or enforcement of any property rights with respect to M&G Mexico's assets regardless of location.

26. The *Concurso Mercantil* is the only foreign proceeding currently pending with respect to M&G Mexico.

### The PBGC and the Chapter 15 Proceedings

27. The Chapter 15 Proceedings became necessary as a result of recent threatened action by the Pension Benefit Guaranty Corporation (the "PBGC") against M&G Mexico's assets. As of the commencement of the M&G Chapter 11 Cases, debtor M & G Polymers USA, LLC, sponsored both an hourly pension plan and a salaried pension plan (collectively, the "Pension Plans"). The M&G Chapter 11 Debtors asserted that the Pension Plans were underfunded single-employer defined benefit plans insured by the PBGC and covered under Title IV of ERISA, 29 U.S.C. § 1301-1461. The Pension Plans were terminated during the pendency of the M&G Chapter 11 Cases, and on June 6, 2018, the PBGC was appointed trustee.

28. On November 9, 2018, the Bankruptcy Court entered an order approving a stipulation by and among the M&G Chapter 11 Debtors and PBGC regarding the allowance of

certain PBGC claims in the cases (the "PBGC Stipulation").[5] The PBGC Stipulation asserted that liability arose as result of (i) each of M&G Chapter 11 Debtors being controlled group members with respect to the Pension Plans, and (ii) the termination of the Pension Plans and resulting joint and several liability of the M&G Chapter 11 Debtors and any non-debtor controlled group member for the Pension Plans' unfunded benefit liabilities, any unpaid minimum funding contributions, and any other liabilities imposed by Title IV of ERISA.[6] The PBGC Stipulation went on to grant the PBGC allowed general unsecured claims in the M&G Chapter 11 Cases in the aggregate amount of $38,349,605.

29. On March 21, 2019, PBGC sent payment demand letters to the New York offices of Morgan, Lewis Bockius LLP ("Morgan Lewis"), requesting prompt payment by M&G Mexico of $36,949,654 in connection with the above termination of the Pension Plans (the "PBGC Demand Letters"). In each of the PBGC Demand Letters, the PBGC contends that M&G Mexico is part of the Pension Plans' broader controlled group that it alleges is financially responsible under the Pension Plans and thus jointly and severally liable to the PBGC for unfunded benefit liabilities, unpaid minimum funding contributions, and certain termination premiums in the stated amount. The PBGC Demand Letters each contained an April 1, 2019 enforcement deadline.

30. Morgan Lewis promptly reached out to the PBGC by email requesting an extension of the April 1, 2019 deadline to allow sufficient time for M&G Mexico to evaluate the demand. The PBGC agreed to an extension to 3:00 p.m. (ET) on April 22, 2019.

31. On April 16, 2019, Morgan Lewis followed up with the PBGC with a letter advising them of the *Concurso Mercantil* and the imposition of a global stay against any PBGC payment

---

[5] M&G Chapter 11 Cases, Dkt. No. 2059.

[6] *See Stipulation*, and Article II.D.2.b of the M&G Chapter 11 Debtors' *Disclosure Statement for Second Amended Joint Plan of Liquidation of the U.S. Debtors and Debtors in Possession*, Dkt. No. 2050.

demand or subsequent enforcement action against M&G Mexico (the "April 16 MLB Letter"). In light of such automatic stay, Morgan Lewis requested that the PBGC cease and desist with any collection efforts outside of the *Concurso Mercantil* in violation of the *Concurso* court orders. A copy of the April 16 MLB Letter is attached hereto as **Exhibit C**. The PBGC subsequently asked for and Morgan Lewis provided a copy in both Spanish and English of the *Concurso* Order describing the global stay.

32.    As of the date hereof, neither Morgan Lewis nor M&G Mexico has received from the PBGC a withdrawal of its threat of enforcement contained as requested in the April 16 MLB Letter. Given the PBGC's impending enforcement deadline at 3:00 p.m. on April 22, 2019, M&G Mexico was forced to file the Chapter 15 Proceedings and the related Provision Relief Motion to protect the *Concurso Mercantil* from the PBGC's threatened action. Additionally, I am analyzing potential causes of action, including in the United States or under United States law, by M&G Mexico against the PBGC relating to or arising from its violation or orders issued by the *Concurso* Court.

WHEREFORE, I respectfully request that this Court enter an Order substantially in the form of the proposed Order attached as Exhibit A to the Verified Petitions, grant the Provisional Relief Motion, as well as afford any other relief as may be just and proper.

Dated: April 21, 2019        Signature: _____